IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
WESTERN DIVISION

**CYNTHIA D'ABADIE**                                                      **PLAINTIFF**

v.                          Case No. 4:18-cv-00356-JM

**PULASKI COUNTY SPECIAL SCHOOL DISTRICT**                **DEFENDANT**

### AFFIDAVIT OF DR. JERRY GUESS

COMES the Affiant, Dr. Jerry Guess, and for his affidavit states on oath:

1. My name is Jerry Guess and I am currently the Superintendent of the Watson Chapel School District. From July 1, 2011 to July 18, 2017, I was the Superintendent of the Pulaski County Special School District ("PCSSD").

2. PCSSD was under state control during most of my tenure and I reported to the Arkansas Department of Education ("ADE") Commissioner. The school had to reduce expenses, primarily by reducing licensed and classified staff.

3. PCSSD reached a desegregation settlement in the 2013-14 fiscal year and continued flat funding of $20,804,500.00 for three years for desegregation program operations and a fourth year for facilities. The last year of operational desegregation funding would be 2016-17. As part of that agreement Jacksonville ("JNPSD") was to detach and form its own district. *See* Settlement Agreement, attached hereto as Exhibit 9-A.

4. JNPSD was to become operationally independent during the 2016-17 school year, resulting in the loss of approximately 4,000 students and over $30 Million to PCSSD. Much of that loss of revenue would be taken care of in the loss of operational costs with JNPSD – teachers, bus routes, utilities, etc. But additional cuts had to take place in PCSSD because it had excessive personnel, particularly at the central office and in operations which were staffed at a level to deal


EXHIBIT 9

with 16,000 students, not 12,000. PCSSD had to plan changes and institute them in 2015-16 so as to prepare for the loss of JNPSD revenue in 2016-2017.

5. The last year for operational desegregation money was 2016-17. So, during the 2016-17 school year, PCSSD had to make plans for the loss of desegregation funding (which was roughly $15 Million because PCSSD had diverted 1/4 of the total funding to JNPSD) that would result in a loss of that money during the 2017-18 school year.

6. These necessary cuts included cuts to the District's Plan and Planning Department, which included Cynthia D'Abadie.

7.

FURTHER AFFIANT SAITH NOT.

_____
Dr. Jerry Guess

6/19/19
Date

STATE OF ARKANSAS )
                  ) ss.    **VERIFICATION**
COUNTY OF         )

Subscribed and sworn to before me, the undersigned Notary Public, this 19th day of June, 2019.



_____
Notary Public

2

**THIS SETTLEMENT AGREEMENT** ("**Agreement**") is entered into as of this \_\_\_\_\_ day of November, 2013, by and between Little Rock School District ("**LRSD**"), Pulaski County Special School District ("**PCSSD**"), North Little Rock School District ("**NLRSD**"), the **Joshua Intervenors**, the Knight Intervenors ("**Knight**"), and the State of Arkansas (the "**State**") (at times hereinafter referred to collectively as the "**Parties**"). At times hereinafter, NLRSD, LRSD and PCSSD are referred to collectively as the "Districts." At times hereinafter the existing settlement agreements and consent decrees among the Parties related to *Little Rock School District v. Pulaski County School District*; et al. USDC No. 4:82-CV-866 and cases consolidated therein (this "**Litigation**") are referred to as the "1989 Settlement Agreement."

This Agreement shall be effective immediately upon the execution of this Agreement by the Parties ("**Effective Date**"), subject only to the approval of the Federal District Court.

### A. Unitary Status:

1. The unitary status of PCSSD will be the subject of a separate agreement between the Joshua Intervenors and PCSSD. The Joshua Intervenors have concerns about some areas of PCSSD's unitary status, but the Joshua Intervenors believe that PCSSD is operating in good faith to resolve those concerns. The Joshua Intervenors agree that no State assistance or support beyond that specifically set forth in this Agreement is needed for PCSSD to address the Joshua Intervenors' concerns. Therefore, the Joshua Intervenors agree that acceptance of this Agreement and release of the State on the terms set forth herein is in the best interests of the Joshua Intervenors.

### B. Dismissal of Parties

1. Upon approval of this Agreement by the Court: 1) the State, LRSD, and NLRSD will be dismissed with prejudice from this Litigation and 2) LRSD and the Joshua Intervenors will voluntarily dismiss with prejudice the current appeal to the Eighth Circuit Court of Appeals regarding charter school issues.

### C. State's Payments Under this Agreement:

1. The State and Districts will make all payments currently scheduled for the 2013-14 school year. Any and all payment obligations of all Parties not pertaining to the 2013-14 school year, to or with all other Parties, under the 1989 Settlement Agreement, prior agreements and orders in this Litigation will cease as of June 30, 2014.

2. Thereafter, the State shall make payments to the Districts each school year in eleven equal installments on a schedule to be determined, which total the following amounts:

1



EXHIBIT 9-A

```
2014-2015:    LRSD = $37,347,429
Year 1        NLRSD = $7,642,338
              PCSSD = $20,804,500

2015-2016:    LRSD = $37,347,429
Year 2        NLRSD = $7,642,338
              PCSSD = $20,804,500

2016-2017:    LRSD = $37,347,429
Year 3        NLRSD = $7,642,338
              PCSSD = $20,804,500
```

    3.    In Year 4 (the 2017-2018 school year), the State shall make payments to the Districts that shall only be used for academic facilities construction projects as defined in Arkansas Code Annotated § 6-20-2502(2) (Repl. 2013). These payments will be made in the 2017-18 school year in eleven equal installments on a schedule to be determined and will total the following amounts:

```
2017-2018:    LRSD = $37,347,429
Year 4        NLRSD = $7,642,338
              PCSSD = $20,804,500
```

    4.    The restriction on the use of the Year 4 payments shall not apply to the extent that the Districts have certified to the Arkansas Department of Education the expenditures for academic facilities construction projects that were paid from District funds provided by paragraph C.2. of this Agreement in Years 1-3 (2014-2017).

    5.    The payments made pursuant to this Agreement will not be considered in determining the State's share of financial participation in local academic facilities projects eligible for State financial participation in any Academic Facilities Partnership Program projects that the Districts may apply for during the term of this Agreement.

    6.    M to M student transition: The ADE and the Districts will develop a roster of all students enrolled in the M to M program as of January 6, 2014, (excluding students who are 12th graders in 2013-14) according to their host District. Each district's roster will rank students in descending order beginning with students in grade eleven. Each district's roster will then be divided into three equal groups. Group 1 will consist of those students whose names appear in the top one-third of the overall list. Group 2 will consist of those students whose names appear in the second third of the overall list. Group 3 will consist of those students whose names appear in the final third of the overall list. In subsequent years the number of students transitioned into the host District's student counts for purposes of determining regular State aid (currently foundation and categorical funding) will be the number of M to M students remaining in the groupings calculated in 2014. In the 2014-15 school year, the students remaining in the first group in each District's roster will be transitioned into their respective host District's student counts for the purpose of determining regular State aid in the 2015-16 school year. In the

2015-16 school year, the students remaining in the next group in each District's roster will be transitioned into their respective host District's student counts for the purpose of determining regular State aid in the 2016-17 school year. In the 2016-17 school year, the students remaining in each District's roster will be transitioned into their respective host District's student counts for the purpose of determining regular State aid in the 2017-18 school year. The transition of M to M students to ADM shall be completed by December 1 of each respective year. In no event will the State be responsible for paying the Districts either declining enrollment or growth funding because of the transition of the students remaining on the rosters.

7. Magnet student transition: The ADE and the Districts will develop rosters of all PCSSD and NLRSD students enrolled in the magnet program as of January 6, 2014, (excluding students who are 12th graders in 2013-14) according to their host District. Each district's roster will rank students in descending order beginning with students in grade eleven. Each district's roster will then be divided into three equal groups. Group 1 will consist of those students whose names appear in the top one-third of the overall list. Group 2 will consist of those students whose names appear in the second third of the overall list. Group 3 will consist of those students whose names appear in the final third of the overall list. For any magnet students for which PCSSD or NLRSD is receiving regular State aid (currently foundation and categorical funding), these Districts will continue to pay one half of the cost of educating the magnet students from their respective Districts to LRSD. In the 2014-15 school year, the students remaining in the first group in PCSSD and NLRSD's rosters will be transitioned into LRSD's student counts for the purpose of determining regular State aid in the 2015-16 school year. In the 2015-16 school year, the students remaining in the next group in PCSSD and NLRSD's rosters will be transitioned into LRSD's student counts for the purpose of determining regular State aid in the 2016-17 school year. In the 2016-17 school year, the students remaining in PCSSD and NLRSD's rosters will be transitioned into LRSD's student counts for the purpose of determining regular State aid in the 2017-18 school year. In no event will the State be responsible for paying the Districts either declining enrollment or growth funding because of the transition of the students remaining on the rosters.

8. In no event shall the State have any obligation to disburse any funding under this Agreement except as described herein.

9. LRSD, NLRSD, and PCSSD shall each receive $250,000 for reimbursement of legal fees within ninety days of this Agreement being approved by the District Court. The State stipulates that Joshua Intervenors and the Knight Intervenors are prevailing parties as to the State with regard to certain motions filed subsequent to the 1989 Settlement Agreement that Joshua joined and which were successful against the State and are entitled to reasonable attorney's fees, in the amount of $500,000 for the Joshua Intervenors and in the amount of $75,000 for the Knight Intervenors unless contested, in which event the Court may award a reasonable fee unless otherwise agreed upon.

10. Within ninety days of this Agreement being approved by the District Court, the State will transfer title to buses used for Magnet and M to M transportation to the respective operating District of each respective bus.

### D. State's Obligations to Terminate:

1. Except as specifically provided in this Agreement, any and all of the State's obligations imposed pursuant to, under the guise of, or in any way related to this Litigation shall forever cease upon execution of this Agreement. As of the last payment under this Agreement, any and all of the State's obligations under this Agreement shall forever cease.

2. The Parties to this Litigation hereby with the execution of this Agreement waive, release, relinquish, and forever discharge the State of Arkansas from any and all federal or state claims, liens, or causes of action, obligation, or liability, known or unknown arising prior to the date of this Agreement, that they have or may have against the State of Arkansas arising out of any claims that were or could have been made in connection with this Litigation or the 1989 Settlement Agreement. The released claims shall specifically include, but not be limited to, any claims for damages, injunctive relief, declaratory relief, attorneys' fees, costs or recovery of any type, against the State of Arkansas including any officers, officials, employees and agents of the State of Arkansas, in their official or individual capacities. In no event shall any party to this Agreement be entitled to any desegregation related payments from the State of Arkansas in excess of those provided for in this Agreement.

3. The jurisdiction of the District Court over the State, LRSD, NLRSD, and Knight is terminated upon the District Court's approval of this Agreement. The only matter over which the U.S. District Court shall have remaining jurisdiction over the State with regard to this Litigation and/or this Agreement after the Effective Date of this Agreement would be in the event that the State fails to pay any amount due under this Agreement.

4. The Parties shall support the District Court's approval of this Agreement, the entry of a Consent Judgment consistent with this Agreement, and the entry of any and all orders necessary to effectuate this Agreement.

5. This Agreement is subject to the review of the Governor, the Legislative Council, the School Boards, and the District Court. If for any reason this Agreement is not approved by the Governor, the Legislative Council, the Districts' Boards, or the District Court, this Agreement will become null and void in its entirety and the Parties agree that this Agreement and all offers, promises, statements and conduct made during negotiation of this Agreement shall be inadmissible as evidence pursuant to Fed. R. Evid. 408.

    6.    This Agreement was prepared by the joint efforts of the Parties, and it shall be construed without consideration as to which party actually drafted the Agreement.

### E. Jacksonville/North Pulaski Area School District

    1.    The State and the Districts agree that the State may immediately authorize the creation of a Jacksonville/North Pulaski area school district consistent with state law. Any successor district or newly created school district in Pulaski County shall be considered a party to and bound by this Agreement. The State and the Districts do not object to the creation of a Jacksonville/North Pulaski area school district. The State will oppose the creation of any other school districts from PCSSD's territory until PCSSD is declared fully unitary and is released from federal court supervision.

### F. School District Obligations

    1.    Students assigned pursuant to the Magnet or M to M program as of the Effective Date of this Agreement may remain in their assigned schools and assigned District. No new applications will be accepted under the Magnet or M to M Stipulations after the effective date of this Agreement, but students may enroll in the Magnet schools as legal transfers in accordance with paragraph F.3 of this Agreement.

    2.    Each District shall continue to provide transportation to remaining Magnet or M to M students residing in their District up to and through the 2016-17 school year. Nothing shall prevent the Districts from agreeing to provide transportation to any remaining such students in the 2017-18 school year or thereafter.

    3.    In addition to the students assigned to Magnet and M to M programs as of the Effective Date of this Agreement, the Districts agree to allow a certain number of legal transfers between the Districts for five consecutive years, beginning in 2014-15, as follows. PCSSD agrees to approve the legal transfers of up to 30 students per year to NLRSD and 30 students per year to LRSD for each of the five years. Siblings of transferred students will be given first priority. If necessary to accommodate siblings of transferred students, PCSSD shall permit the transfer of the affected siblings, but the number of students in excess of the 30 transfers per year limit shall be deducted from the next year's 30 student transfer limit for that District. In no event shall the number of legal transfers from PCSSD exceed 150 students for NLRSD and 150 students for LRSD during the five year period. During this period, PCSSD may consider but is not required to approve legal transfers from NLRSD or LRSD. NLRSD and LRSD agree to approve legal transfers of up to 30 students per year each to the other for each of the five years with the same exception for sibling transfers outlined above. During the five year period, the Districts agree to abide by the terms of Act 1227 of 2013, the Arkansas Public School Choice Act of 2013, including the exemption provisions contained in Ark. Code Ann. 6-18-1906(a) and (b). For students transferred under this provision, the Districts further agree to waive the transfer review at the end of four years, referenced in Ark. Code Ann. 6-18-316(g), and allow the students who have transferred pursuant to Ark. Code Ann. 6-

18-316 to remain in the District to which they have transferred for the remainder of their kindergarten through twelfth grade education if the students so choose. The State and the Districts agree that the transfers allowed in this paragraph will not negatively affect the racial balance of the Districts as referenced in Ark. Code Ann. 6-18-317. If necessary, ADE will provide a waiver of prohibition.

4. Except as specifically provided in this Agreement, any and all of the Parties' obligations imposed pursuant to, under the guise of, or related to this Litigation or the 1989 Settlement Agreement shall forever cease as of the District Court's approval of this Agreement.

5. After any required payment for the 2013-14 school year, LRSD shall have no further obligation to make payments to PCSSD pursuant to Section II, Paragraph O, subparagraphs 3 and 4 of the 1989 Settlement Agreement, or any related orders or agreements.

6. The Court will maintain jurisdiction over Joshua and PCSSD as provided in the separate agreement between Joshua and PCSSD.

_____, A.G.     11-18-13
The State of Arkansas              Date

_____           11-19-13
Sen. Bill Sample                   Date

_____           11-21-13
Rep. John Charles Edwards          Date

_____           11/18/13
Little Rock School District        Date

_____           11/19/13
North Little Rock School District  Date

6

_____   November 18, 2013
Pulaski County Special School District      Date

_____   November 18, 2013
Joshua Intervenors      Date

_____   11-18-13
Knight Intervenors      Date

7