**IN THE UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF ARKANSAS**
**WESTERN DIVISION**

**CYNTHIA D'ABADIE**                                                                    **PLAINTIFF**

> **v.**                         **Case No. 4:18-cv-00356-JM**

**PULASKI COUNTY SPECIAL SCHOOL DISTRICT**                              **DEFENDANT**

**MEMORANDUM BRIEF IN SUPPORT OF**
**DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

This Memorandum Brief is submitted in support of the Motion for Summary Judgment ("Motion") filed by Defendant, Pulaski County Special School District ("PCSSD" or "District"), pursuant to Rule 56 of the Federal Rules of Civil Procedure.   For the reasons discussed herein, the District is entitled to summary judgment as a matter of law.

## I.        INTRODUCTION AND FACTUAL BACKGROUND

Cynthia D'Abadie is an employee of the District, currently serving as the Energy Manager System Scheduler in the Plant Planning Department ("Plant Planning") at the District.   *See* Complaint, ECF Doc. No. 1 at ¶ 2.   D'Abadie has served in this position since July 1, 2017.   *Id.* at ¶ 12, Ex. C to Complaint.   Previously, D'Abadie served as the Energy Manager for the District, a position that was eliminated at the completion of the 2016-2017 school year.   *See* Complaint at ¶ 2 and Ex. 1 to Complaint, and also February 20, 2017 *Memorandum: Narrative of Justification for Reduction In Force of Plant Planning Staff* ("Memorandum"), attached as <u>Exhibit 1</u> to the District's Motion.   Pursuant to the Memorandum, Jeff Lynch, District Coordinator for Energy Management and D'Abadie's direct supervisor, recommended to Derek Scott, former District Executive Director of Operations, the restructuring of the Plant Planning staff due to the loss of desegregation money, to include the elimination of D'Abadie's position, Energy Manager, and the

creation of a new position, Energy Management System Scheduler following the Plant Planning restructuring, her current position.  *See* Ex. 1.  Lynch also recommended the elimination of the Engineering Technician I position in Plant Planning, held by Danny Bryan, who was also rehired as one of the two newly created Energy Management Systems Scheduler positions, the other position offered and now held by D'Abadie.  *See* Ex. 1 and Non-Renewal Letter of Danny Bryan and Recall Letter, attached as Exhibits 2 and 3, respectively, to the Districts' Motion.

D'Abadie never lost employment with the District; instead, she simply accepted the newly-created position of Energy Management System Scheduler.  The only material change in her benefits was a salary reduction of $10,931.20, as the new position was a range 15 on the District classified salary scale, down from a range 23 with her previous position.  *See* D'Abadie's 2016-2017 and 2017-2018 contracts, attached as Exhibits 4 and 5, respectively, to the District's Motion. Still, the loss in benefits triggered D'Abadie's due process rights under the Arkansas Public School Employee Fair Hearing Act ("APSEFHA") to a school board hearing.

Pursuant to APSEFHA, D'Abadie and Bryan were given notice on April 17, 2017 that their positions, Energy Manager and Engineering Technician I, respectively, would be eliminated due to changes in program needs of the District for the 2017-2018 school year, but that they both would be afforded recall rights to any other available position.  *See* Ex. 3 and D'Abadie's April 17, 2017 Notice Letter, attached as Exhibit 6 to the District's Motion.   Indeed, D'Abadie was recalled to her current position of Energy Management System Scheduler by letter dated May 25, 2017.  *See* May 25, 2017 Recall Letter, attached as Exhibit 7 to the District's Motion and 2017-2018 Contract, Ex. 5.

Despite being recalled to new positions, D'Abadie and Bryan exercised their right to a hearing on the non-renewal of their 2016-2017 contracts as Energy Manager and Engineering

Technician I, respectively, which was held on Tuesday, August 8, 2017, before the District Board of Directors.   *See* Hearing Transcript Cover Page, attached as <u>Exhibit 8</u> to the District's Motion.[1] Superintendent Dr. Jerry Guess's Notice Letter (<u>Ex. 6</u>) cited changes in program needs.   Guess testified that he directed all departments to make budget cuts to their personnel staff by around 25 percent due to the loss of desegregation funding.   *See* Affidavit of Jerry Guess, attached as <u>Exhibit 9</u> to the District's Motion.   It was well known the District was going to lose nearly $21 Million Dollars in desegregation funding out of its operational budget for the 2017-2018 school year.   *Id.* at 3.   Moreover, the previous year, nine schools had detached from the District with the creation of the new Jacksonville North Pulaski County School District ("JNPSD") that started the 2016-2017 school year, decreasing the need for the same operational staff the District had prior to the detachment.   *Id.* at 4.   The District needed to make personnel cuts across the board, including Plant Planning, because that division was now serving fewer schools.

Dr. Guess's directive for all departments to make budget cuts through personnel reductions in the Spring of 2017 is consistent with the testimony of Jeff Lynch, D'Abadie's immediate supervisor, and Paul Brewer, Chief Executive Office of the District.   Lynch recalled that he was directed by his immediate supervisor, Derrick Scott, to make personnel budget cuts in Plant Planning by roughly 26 percent, which resulted in his decision to cut D'Abadie's position, along with the Energy Engineering Technician position held by Danny Bryan.   *See* Deposition of Jeff Lynch, excerpts of which are attached to the District's Motion as <u>Exhibit 10</u>, at p. 31, and February 20, 2017 Memorandum, <u>Ex. 1</u>.   Lynch's testimony is consistent with his February 20,

---

[1] The full record of the hearing is not attached as an exhibit, as it is 149 pages and not germane to this lawsuit because Plaintiff is not bringing claims under the Arkansas Public School Employee Fair Hearing Act.

2017 Memorandum, citing a loss in desegregation funding as reason for the non-renewals of D'Abadie and Bryan.

Paul Brewer testified all departments were asked to make personnel cuts by 25 percent, with each department head given the task of determining the positions to be cut and creating any new job description for newly created positions, at lesser pay.  *See* Deposition of Paul Brewer, excerpts of which are attached to the District's Motion as <u>Exhibit 11</u>, at pp. 17-18.   Indeed, the positions D'Abadie and Bryan accepted for the 2017-2018 school year contained new job descriptions with less responsibility, which resulted in lesser pay.  *See* Job Descriptions of Energy Manager and Energy Management System Scheduler, attached to the District's Motion as <u>Exhibits 12 and 13</u>, respectively.

Despite the overwhelming evidence that D'Abadie's position was eliminated due to budget cuts and program needs because of a continued loss in desegregation funding, coupled with the loss of nine schools with the JNPSD Detachment, and despite her being recalled to a different but similar position of Energy Management Systems Scheduler (along with Danny Bryan), D'Abadie claims that the employment action was retaliatory because she had complained on three separate occasions to her superiors about racial mistreatment of African-American staff and students in schools of the District.  *See* Complaint, generally, and ¶¶ 11-12.   D'Abadie, a Caucasian female, denies she was ever racially discriminated against, but alleges that she advocated for the rights of African-American students and staff in the District on at least three occasions, which was known to her superiors.  *Id.* at ¶ 12.

D'Abadie described three separate incidents she believed were part of the District's alleged retaliatory motive.   In June of 2016, D'Abadie claims she discovered her co-worker, Danny Bryan (who held the Engineering Technician position which was non-renewed), changed temperature

cooling set points at an elementary school where a program for predominately African-American students was being held.   *See* Complaint at ¶ 12(a).   On July 6, 2016, D'Abadie claims she learned that Bryan had again changed temperature cooling set points at a gym of the predominately African-American Bates Elementary School to make the African-American principal, Dr. Bell, uncomfortable.[2]   *Id.*

Lastly, D'Abadie claims that on February 27, 2017, she learned that her supervisor, Jeff Lynch, lowered heat set points at the predominately African-American College Station Elementary School to make students and teachers uncomfortable.   The only evidence D'Abadie presented to support this claim about Lynch was that she did not think Bryan lowered the temperature set points because he had been disciplined about this same issue previously, and she "could not imagine that Danny would have gotten in trouble for raising the cooling of four units . . . and then turn around six months later and do an entire school.   That did not make sense to me."   *See* Deposition of Cynthia D'Abadie, excerpts of which are attached to the District's Motion as <u>Exhibit 14</u>, at p. 90. Only D'Abadie, Bryan, Lynch, and a third employee, Butch Camp, had access to change set points, and D'Abadie surmised that if she did not do it, and Bryan had previously been reprimanded for similar conduct, it must have been Lynch.   *Id.* at pp. 90-93.

In addition to these three incidents where D'Abadie alleges she reported inappropriate activity by co-workers who allegedly changed temperature set points, she also alleged she heard racist comments by Bryan and on one occasion observed Bryan viewing inappropriate pictures of female anatomy on his computer.   *See* <u>Ex. 14</u>, pp. 93-94.   D'Abadie also alleges that Lynch made comments that the students at College Station Elementary (predominantly black) "did not deserve

---

[2] D'Abadie, along with Bryan, Jeff Lynch, and a third employee were able to remotely control temperatures in any building in the District using a software program they could access.   *See* <u>Ex. 14</u> at pp. 90-93.

shiny new buildings, they didn't pay their fair share of property taxes." *Id.* at 92.   D'Abadie admits these alleged issues were the only ones she was subjected to prior to her position being non-renewed from the District.   *Id.* at 95.

D'Abadie agreed that the District investigated her complaints about Bryan changing temperature set point and he was disciplined for his conduct.   *Id.* at 96-97.   D'Abadie met with Paul Brewer, District Chief Executive Officer, in August of 2016, about her complaints related to the June and July of 2016 temperature set point changes by Bryan.   *Id.* at 96.   Shortly after that meeting, Bryan, Brewer, Lynch and Jerry Holder (previously the plant planning director and serving as a consultant at this time) had a meeting to discuss D'Abadie's concerns and Lynch told D'Abadie the issues she complained of "would never happen again." *Id.* at 100.   D'Abadie agreed there were no more issues with Bryan allegedly changing temperature set points, and no other issues until a temperature set point changed allegedly occurred in February of 2016, which she claims Lynch did.   Lynch placed a reprimand in Bryan's file over the set point changes.   *See* Lynch Deposition, Ex. 10, p. 32.

## II.    SUMMARY JUDGMENT STANDARD

Under Rule 56 of the Federal Rules of Civil Procedure, a court may grant summary judgment if the moving party has established its right to a judgment with such clarity as to leave no room for controversy, and the non-moving party is not entitled to recover under any discernable circumstances.   *See LeCroy v. Dean Witter Reynolds, Inc.*, 585 F. Supp. 753 (D.C. Ark. 1984).

Rule 56(c) of the Federal Rules of Civil Procedure provides that:

> the judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact, and that the moving party is entitled to judgment as a matter of law.

When the record, taken as a whole, could not lead a rational trier of fact to find for the non-moving party, then there is no genuine issue for trial. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (the non-movant "must do more than simply show that there is some metaphysical doubt as to the material facts."). The non-moving party may not rest on mere allegations or denials of his pleading but must come forward with specific facts showing a genuine issue for trial. *Id*. at 587. "[A] genuine issue of material fact exists if: (1) there is a dispute of fact; (2) the disputed fact is material to the outcome of the case; and (3) the dispute is genuine, that is, a reasonable jury could return a verdict for either party." *RSBI Aerospace, Inc. v. Affiliated FM Ins. Co*., 49 F.3d 399, 401 (8th Cir. 1995).

## III.   ARGUMENT AND AUTHORITY

### A.   D'Abadie Cannot Make A Prima Facie Race Discrimination or Retaliation Claim.

As an initial matter, D'Abadie cannot state a claim for discrimination under Title VII, because she is not claiming she was discriminated against because of her race, white. *See Williams v. Lindenwood University*, 288 F.3d 349, 355 (8th Cir. 2002) (requiring plaintiff to be a member of a minority to state a claim under § 1981); *Martinez v. W.W. Grainger, Inc.*, 664 F.3d 225, 230 (8th Cir. 2011) (prima facie race discrimination case requires the plaintiff show he is "a member of a protected class"). D'Abadie is not claiming she is a member of a protected class as to her race, and therefore does not have a claim for discrimination under Title VII as to race discrimination.

Similarly, D'Abadie's retaliation claims fails.[3]   Since D'Abadie has no direct evidence of discrimination, the Court must rely on the *McDonnell Douglas* burden-shifting framework.   *See McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973).   As seen in the *McDonnell Douglas* framework, "if the plaintiff can establish a prima facie retaliation case, the defendant must provide a legitimate, nondiscriminatory reason for its decision . . . [i]f the defendant does so, the burden then shifts back to the plaintiff to show that the proffered reason was merely a pretext for discrimination."   *Id.* (internal citations omitted).   To establish a prima facie case of retaliation, D'Abadie must show that "(1) [she] engaged in statutorily protected activity; (2) an adverse employment action was taken against her; and (3) a causal connection exists between the two events."   *Id.* (quoting *Green v. Franklin Nat'l Bank of Minneapolis*, 459 F.3d 903, 914 (8th Cir. 2006)).

### 1.   D'Abadie Did Not Engage in Protected Conduct.

D'Abadie can only show one element of a prima facie retaliation case, that she suffered an adverse employment action.   She cannot show she engaged in protected activity, or a causal connection between that activity and her termination.

Protected conduct under Title VII is conduct where an employee "has opposed any practice made unlawful by Title VII, or made a charge, testified, assisted, or participated in any manner in an investigation, proceeding or hearing under the statute.   *Davis v. Jefferson Hosp. Ass'n*, 685 F.3d 675, 684 (8th Cir. 2012) (internal quotations omitted).   The "opposition clause" prohibits retaliation because the employee "opposed any practice made an unlawful employment practice by [Title VII]," while the "participation clause" prohibits retaliation because the

---

[3] Plaintiff's Complaint does not raise a retaliation claim under 42 U.S.C. § 1981, but still, Title VII and § 1981 are analyzed under the same framework. *Gacek v. Owens & Minor Distribution, Inc.*, 666 F.3d 1142, 1146 (8th Cir. 2012).

employee "made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under [Title VII]."  *Id.* (citing *Holden v. Owens-Illinois, Inc.*, 793 F.2d 745, 748-53 (6th Cir.), *cert. denied*, 479 U.S. 1008, 93 L. Ed. 2d 704, 107 S. Ct. 649 (1986)). Said another way, to engage in protected conduct a plaintiff must "oppose" a practice, or "assist in a proceeding."  *Id.*

D'Abadie cannot prove that the matters she complained about were protected under Title VII.  *See Wimmer v. Suffolk County Police Dep't.*, 176 F.3d 125, 135 (2d Cir. 1999) (plaintiff's complaint of retaliation for opposing discrimination by co-employees against non-employees is not cognizable under Title VII because the statute only prohibits discrimination by employers, not co-employees, and thus plaintiff's opposition was not directed at an unlawful employment practice).   D'Abadie alleges she complained to administration about three separate incidents where temperature set points were changed to make occupants uncomfortable at predominantly African-American schools.  *See* Compliant at ¶ 12.   D'Abadie met with Paul Brewer over her complaints and participated in a District investigation of her complaints by the District's former legal counsel.  *See* D'Abadie Deposition, Ex. 14, p. 97-100.   Both instances were internal investigations initiated by the District.   These investigations were not "official investigations" recognized under Title VII.

> "The "investigation" to which section 2000e-3 refers does not include an investigation by the employer, as distinct from one by an official body authorized to enforce Title VII.   The participation clause prohibits retaliation against an employee who "has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under" Title VII.   A purely internal investigation does not involve a "charge," or testimony, and neither is it a "proceeding" or a "hearing."   To bring an internal investigation within the scope of the clause we would have to rewrite the statute.   We therefore join the courts that interpret the participation clause as being limited to official investigations.

*Hatmaker v. Mem'l Med. Ctr.*, 619 F.3d 741, 746-47 (7th Cir. 2010), citing *EEOC v. Total System Services, Inc.*, 221 F.3d 1171, 1174 (11th Cir. 2000); *Brower v. Runyon*, 178 F.3d 1002, 1006 (8th Cir. 1999); *Vasconcelos v. Meese*, 907 F.2d 111, 113 (9th Cir. 1990); contra, *Hashimoto v. Dalton*, 118 F.3d 671, 679-80 (9th Cir. 1997).

Likewise, D'Abadie has presented no evidence that she "opposed any practice made unlawful by Title VII."   Indeed, D'Abadie has not "opposed any practice" because no practice existed, thus, no evidence of such exists.   D'Abadie's activity is akin to the activity in *Artis v. Francis Howell N. Band Booster Ass'n*, where the plaintiff, Artis, complained to the school's principal and three assistant superintendents about treatment the principal gave a black student that Artis perceived as disparate to the treatment given to a white student.   161 F.3d 1178, 1183 (8th Cir. 1998).   Artis alleged he was fired in retaliation for these complaints.   The Eighth Circuit held that Artis's complaints were outside the ambit of a protected employment practice under Title VII.   *Id.*   Specifically, *Artis* held that retaliation based on discrimination toward students does not meet the first prong of a Title VII prima facie case.   *Id.*   For this reason, all complaints by D'Abadie about temperature set points being changed at predominantly African-American schools are not protected.   This is not only because it is at most student discrimination, but the changing of heating and cooling set points, whether it impacts students or staff, is simply not the type of conduct Title VII was created to protect.

*Artis* is consistent with other Eighth Circuit case law, because a plaintiff must show they opposed an *unlawful* employment practice.   *See Bakhtiari v. Lutz*, 507 F.3d 1132, 1137-38 (8th Cir. 2007) (teaching assistant's complaints to student affairs office about the administration were simply complaints about "unsavory actions" that did not constitute complaints about unlawful employment practices); *Curd v. Hank's Disc. Fine Furniture, Inc.*, 272 F.3d 1039, 1041 (8th Cir.

2001) (e-mail concerning salesman who opened his pants and tucked in his shirt was not a complaint concerning an unlawful employment practice) and *Evans v. Kansas City, Mo. Sch. Dist.,* 65 F. 3d 98, 101 (8th Cir. 1995) (finding no Title VII violation where employee complained about school principal's actions in complying with a desegregation order because such a complaint is not based on an employment practice).

The *Evans* case provides significant guidance as the court held that plaintiff complaining about the school districts compliance with a desegregation directive that disregarded the needs of black students did not "relat[e] to the term and condition" of plaintiff's employment. *Evans,* 65 F.3d at 101. As the *Evans* court held, Title VII is not a "bad acts" statute. *Id.* Likewise, D'Abadie's complaints were not related to her employment or some employment practice of the District. Complaining about a co-worker changing cooling and heating set points at schools does not specifically relate to a term and condition of D'Abadie's employment. D'Abadie's complaint against Danny Bryan was that on one occasion he viewed inappropriate pictures on his computer. *See* Ex. 14, p. 94.

D'Abadie admitted sexual advances were never made toward her. *Id.* D'Abadie's complaints are not covered under Title VII. As seen above, to be protected conduct he must be "opposing a practice" or "participating" in a hearing relating to a charge of discrimination. Simply complaining about temperature changes at schools and that a co-worker looked at inappropriate pictures on his computer is not opposing a practice; this is especially true when no discriminatory practice exists. D'Abadie never engaged in protected conduct, thus her racial retaliation claims fail.

D'Abadie has offered no evidence that any administrator or board member of the District engaged in a discriminatory practice. She has offered no evidence that the District supported or

promoted a practice of employees changing cooling or heating set points at schools.   Thus, there is no evidence that D'Abadie opposed a discriminatory practice, because no such practice existed.

### 2. Assuming *Arguendo* D'Abadie Engaged in Protected Conduct, She Cannot Show a Causal Connection Between that Conduct and her Termination.

To establish causation, a plaintiff must prove "the desire to retaliate was the but for cause of" her termination. *Wright v. St. Vincent Health Sys.*, 730 F.3d 732, 737 (8th Cir. 2013) (quoting *Univ. of Texas Sw. Med. Ctr. v. Nassar*, 133 S. Ct. 2517, 2528 (2013)).   In other words, "that the unlawful retaliation would not have occurred in the absence of the alleged wrongful action or actions of the [employer]." *Id.*

An inference of retaliatory motive may be supported by evidence that the defendant was aware of protected activity and that the date of the adverse employment action closely followed such activity.   *See Rath v. Selection Research, Inc.*, 978 F.2d 1087, 1090 (8th Cir. 1992); *Keys v. Lutheran Family and Children's Services*, 668 F.2d 356, 358 (8th Cir. 1981); and *Nelson v. J.C. Penney Co.*, 75 F.3d 343, 346-47 (8th Cir. 1996).

"The plaintiff's ultimate burden in a Title VII retaliation case is to prove an impermissible retaliatory motive was the 'but-for cause' of the adverse employment action." *Donathan v. Oakley Grain, Inc.,* 861 F.3d 735, 739 (8th Cir. 2017) (citing *University of Texas Southwestern Medical Center*, 570 U.S. at 360 ("Title VII retaliation claims must be proved according to traditional principles of but-for causation . . . . This requires proof that the unlawful retaliation would not have occurred in the absence of the alleged wrongful action or actions of the employer."). "[T]emporal proximity serves as . . . strong evidence of causation . . . ." *Id.* at 741.

The court is required to "keep in mind that [f]ederal courts do not sit as a super-personnel department that reexamines entity's business decisions . . . .   Rather, [the court's] inquiry is

limited to whether the employer gave an honest explanation of its behavior." *Wilking v. County of Ramsey*, 153 F.3d 869, 873 (8th Cir. 1998) (citing *Harvey v. Anheuser-Busch, Inc.*, 38 F.3d 968, 973 (8th Cir. 1994)).

"[The] trial judge is allowed to decide on a motion for summary judgment that the evidence is insufficient for a reasonable trier of fact to infer discrimination even though the plaintiff may have created a factual dispute as to the issue of pretext… To demonstrate pretext, a plaintiff must present sufficient evidence to demonstrate both that the employer's articulated reason for the adverse employment action was false and that discrimination was the real reason… This burden will not be met by simply showing that the reason advanced by the employer was false; rather, [the plaintiff] must demonstrate that a discriminatory animus lies behind the defendants' neutral explanations… Specifically, the plaintiff must do more than simply create a factual dispute as to the issue of pretext; he must offer sufficient evidence for a reasonable trier of fact to infer discrimination." *Id*. at 874 (internal citations and quotation marks omitted) (emphasis in original).

The only evidence of race-based retaliation is D'Abadie's complaining of heating and cooling set point changes by staff.   Paul Brewer, the Chief Executive Officer of the District, could not even recall D'Abadie's complaints about personnel in her department, but was adamant he would never agree to eliminate a position because of someone's complaint, but the cuts in plant planning were strictly to reduce the budget.   *See* Brewer Deposition, <u>Ex. 11</u>, pp. 11 and 40. D'Abadie could only assume administration knew since she was told by Lynch that her complaint "went all the way to the top."   *See* D'Abadie Deposition, <u>Ex. 14</u>, pp. 98-101.   D'Abadie is attempting to impute knowledge of her complaints on to District administration and decision makers based on this one statement by Jeff Lynch.   However, D'Abadie admitted she had no

evidence that Dr. Guess (the superintendent and decision maker) knew of her complaint, and she even testified, "I don't believe – I don't believe he [Guess] – it's possible, but I don't – it's possible, but I really think he was involved in that. I don't." *Id*. at pp. 110.   Furthermore, D'Abadie admitted she had no evidence that the school board which ultimately accepted Guess's recommendation knew anything about her complaints, besides one instance where she emailed board member Linda Remele with her complaints, but Remele never responded.   *Id*. at 113-114.

This scant evidence of potential notice by District actors cannot preclude summary judgment because speculation is insufficient to establish a causal connection.   *Caudill v. Farmland Industries, Inc.*, 919 F.2d 83, 86-87 (8th Cir. 1990) (close temporal proximity between filing of age discrimination charges and firing of plaintiff was only a "slender reed of evidence" for which "rank speculation" would be required to assume causal  connection  between  the two  events,  in  light  of  other  evidence  presented); *see also Quiroga v. Hasbro, Inc.*, 934 F.2d 497, 501 (3d Cir.1991), *cert. denied*, 502 U.S. 940 (1991) ("inference based on timing alone" was insufficient in light of other evidence presented).

### 3.   Plaintiff Cannot Prove the District's Reason for Terminating Her Was a Pretext for Retaliation.

Assuming *arguendo* that D'Abadie can establish a prima facie case of racial retaliation, her claim will still fail because she cannot prove the reasons for her termination are pretextual. Under *McDonnell Douglas*, if D'Abadie establishes a prima facie case of retaliation then PCSSD has the burden of articulating a non-discriminatory, legitimate basis for the challenged actions. *Id*.   If PCSSD meets this burden, then D'Abadie must provide a genuine issue of material fact showing the reasons were merely a pretext for discrimination.   *See Barber v. C1 Truck Driver Training, LLC*, 656 F.3d 782, 792 (8th Cir. 2011).

D'Abadie was non-renewed and then recalled into a new position as part of a District-wide reduction in staff to save money with the loss of desegregation funding.   D'Abadie's loss in pay was not unique to her.   To show pretext, D'Abadie must show the District's justification for non-renewing her position and then recalling her to a new position is "unworthy of credence." *Smith v. Allen Health Sys., Inc.*, 302 F.3d 827, 834 (8th Cir. 2002).   "[A] reason cannot be proved to be a 'pretext *for* [*retaliation*]' unless it is shown *both* that the reason was false, *and* that [retaliation] was the real reason."   *Floyd*, 188 F.3d at 937 (quoting *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 511 (1993)).   "[M]ore substantial evidence of discrimination is required to prove pretext, because evidence of pretext is viewed in the light of [the employer's] legitimate, non-discriminatory explanation."   *Jones v. United Parcel Service, Inc*., 461 F.3d 982, 992 (8th Cir. 2006). "To succeed at this stage . . . plaintiff] must prove the prohibited reason was a determinative factor in [the employer's] decision . . . ."   *Id*.

There are several methods D'Abadie could have used to show that the District's reasons for her partial non-renewal were pretextual.   D'Abadie could have relied on a strong prima facie case because a strong prima facie case can establish evidence of pretext.   *Smith*, 302 F.3d at 834.   Though at the pretext stage "[a]n employee's attempt to prove pretext . . . requires more substantial evidence [than it takes to make a prima facie case.]"   *Logan v. Liberty Healthcare Corp.*, 416 F.3d 877, 881 (8th Cir. 2005) (quoting *Smith*, 302 F.3d at 834) (internal quotations omitted).   However, D'Abadie's prima facie case is far too weak to allow a jury to find the District's reasons were only pretextual.   Specifically, this argument fails because D'Abadie did not provide enough evidence to establish a causal connection between her complaints about staff changing temperature set points and her non-renewal and rehire by the District.

15

D'Abadie could have chosen to attempt to prove pretext by showing that the District's proffered reasons for non-renewing her contract had "no basis in fact." *Smith*, 302 F.3d at 834. However, the District has put forth undisputed evidence that the District was reducing personnel costs system-wide to meet its changing needs and loss of desegregation funding.   Courts have held that reductions in force are legitimate business reasons when they serve to reduce cost and improve efficiency.   *Buettner v. Eastern Arch Coal Sales Co.*, 216 F.3d 707, 716 (8th Cir. 2000). In general, it is not the court's role to second-guess businesses' assessments of general economic conditions, their own performance, and their own staffing needs.   *Dorsey v. Pinnacle Automation Co.*, 278 F.3d 830, 837 (8th Cir. 2002).   "Federal courts do not sit as super personnel departments reviewing the wisdom or fairness of the business judgments made by employers, except to the extent that those judgments involve intentional discrimination."   *Edmund v. MidAmerican Energy Co.*, 299 F.3d 679, 685-86 (8th Cir. 2002).

It is undisputed that the District was losing some $21 Million Dollars in desegregation funding for the 2017-2018 school year that could only be used for facilities, not salaries.   *See* Guess Affidavit, Ex. 9.   Furthermore, the District needed to reduce personnel in its operational departments by roughly 25 percent to off-set the loss of funding and because the District had previously lost nine schools to the newly created JNPSD.   *Id*.   These are legitimate, non-discriminatory reasons for changing D'Abadie's job duties (along with her co-worker Bryan). D'Abadie offers no proof that the District's proffered reasons were false.   Further, she offered no evidence tying the decision to non-renew her position to a retaliatory motive based on race. As seen in *Floyd*, D'Abadie was required to present evidence that the District's reasons were false *and* that retaliation was the real reason she was terminated, and she has failed to present any evidence rebutting the District's legitimate reasons for the employment action.   D'Abadie offers

16

nothing, and without some evidence her claim fails.   Thus, the District is entitled to summary judgment on this claim

**B.   Any Retaliation Claim Brought Under 42 U.S.C § 1983 Fails for the Same Reasons.**

The Eighth Circuit Court of Appeals has held that a § 1983 claim based on alleged violation of equal protection in the employment context is analyzed in the same way as a Title VII claim of sex, race, or religious discrimination. *Hicks v. St. Mary's Honor Ctr.*, 970 F.2d 487, 490–91 (8th Cir. 1992), rev'd on other grounds, 509 U.S. 502, 113 S. Ct. 2742, 125 L. Ed. 2d 407 (1993); *Richmond v. Board of Regents of the Univ. of Minnesota*, 957 F.2d 595, 598 (8th Cir. 1992) (burden of showing prima facie case of discrimination is the same under Title VII, § 1981, § 1983, or the IDEA); *Briggs v. Anderson*, 796 F.2d 1009, 1021 (8th Cir. 1986) (inquiry into intentional discrimination for individual actions brought under §§ 1981 and 1983 is essentially the same as inquiry under Title VII); *Craik v. Minnesota State Univ. Bd.*, 731 F.2d 465, 468 n. 5 (8th Cir. 1984) (issue of discriminatory intent is common to analyses under Fourteenth Amendment, § 1983, and Title VII).

Thus, D'Abadie's § 1983 claim fails for the same reasons as above, and Defendant is entitled to summary judgment.

## IV.   CONCLUSION

Based upon the foregoing argument and authority, the District respectfully submits that its Motion for Summary Judgment should be granted and that Plaintiff's Complaint should be dismissed with prejudice.

Respectfully submitted,

BEQUETTE, BILLINGSLEY & KEES, P.A.
425 West Capitol Avenue, Suite 3200
Little Rock, AR 72201-3469
Phone: (501) 374-1107
Fax: (501) 374-5092
Email: jbequette@bbpalaw.com
Email: ckees@bbpalaw.com

By:    **W. Cody Kees**
        Jay Bequette, Ark. Bar #87012
        W. Cody Kees, Ark. Bar #2012118

18